Rec'd pt #061235

ECF

ORIGINAL

FILED
AUG 1 9 2004
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

D.C.I. DANACO CONTRACTORS, INC., :
Plaintiff, :
v. : No. 04-1338C
THE UNITED STATES, :
Defendant. :

**COMPLAINT**

For its Complaint in the above-captioned matter, Plaintiff, D.C.I. Danaco Contractors, Inc. ("DCI"), through its undersigned counsel, states as follows:

NATURE OF ACTION

1. This action seeks a declaratory judgment that the United States has breached its contract with DCI by failing and refusing to administer the contract and by further failing and refusing to make required contract payments. The Court is requested to rule that the contract has been constructively terminated for the convenience of the government.

JURISDICTION

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. 1491(a)(1).

PARTIES

3. Plaintiff DCI is a New York corporation with its principal place of business at North Babylon, New York.

4. Defendant, the United States, through its agencies, the Department of Agriculture ("USDA") and the Department of Homeland Security ("Homeland Security"), is responsible for administering the contract at issue.

FACTUAL ALLEGATIONS

5. On July 20, 2000, the United States Department of Agriculture advertised a solicitation for the Plum Island Power Plant Replacement. The project included the construction of a new building, new steam boilers, standby generators, switchgear, piping, utilities and mechanical work.

6. The Plum Island Animal Disease Center, located at the easternmost point of Long Island, is responsible for the research and diagnosis of foreign animal diseases, such as foot and mouth disease, in order to protect the United States' animal industries from the catastrophic outbreak of a foreign disease. It is an isolated and secure facility, accessible only by boat.

7. DCI submitted the lowest responsive bid and was awarded a contract on October 18, 2001, in the amount of $11,943,960.00.

8. On January 23, 2002, the USDA issued DCI the "Notice to Proceed."

9. The USDA initially administered this contract pursuant to the authority of a contracting officer located in Beltsville, Maryland.

10. On November 25, 2002, the Department of Homeland Security assumed responsibility for the nation's security against terrorism. (P.L. 107-296). It established a reorganization plan for the transition of various agencies and responsibilities to the newly created department. Among the facilities to be transferred to Homeland Security was the Plum Island Animal Research Facility. The transfer of the Plum Island facility occurred on June 1, 2003.

11. The USDA, under an agreement with Homeland Security, continued to administer the DCI contract at Plum Island after June 1, 2003.

12. On May 24, 2004, the USDA issued contract modification No. 12, stating that the USDA would no longer administer DCI's contract and that the new contracting officer would be Mr. Michael Vallone, at the Department of the Army's Fort Detrick facility in Frederick, Maryland. The contract modification set forth Mr. Vallone's address and telephone number and directed DCI to submit all further invoices and correspondence to him.

13. On May 25, 2004, Kling-Lindquist ("Kling"), the USDA's architect-engineer, approved DCI's progress payment No. 16 in the amount of $499,459.28.

14. DCI contacted Mr. Vallone on May 26, 2004, as directed, to advise him that it would send its progress payment request to

him at Fort Detrick. DCI was not able to reach Mr. Vallone by telephone and was only able to leave him a voicemail message.

15. DCI called Mr. Vallone again, on May 27, 2004. Once again it could only leave a voicemail message, advising Mr. Vallone that it was sending its payment request to him.

16. On June 2, 2004, Mr. Vallone telephoned DCI to advise its representatives that DCI's voicemail messages were the first "notice" he had received that he would be the contracting officer for DCI's Plum Island project, that he did not believe that this contract had been transferred to his authority, and that he did not have any documentation from USDA or Homeland Security regarding the transfer of contracting officer authority.

17. On June 3, 2004, Mr. Vallone advised DCI that he did not have any authority to act as the contracting officer, that he would not be the contracting officer, and that DCI should send its payment requisition to the USDA.

18. DCI later discovered that the USDA had unilaterally decided, on May 24, 2004, to abandon its responsibility to administer DCI's contract and that it did not have any agreement or understanding with either Mr. Vallone or Homeland Security regarding the relinquishment of its contract responsibilities or the transfer of administration of the contract.

19. In accordance with Mr. Vallone's instructions on June 3, 2004, DCI sent its April payment requisition, No. 16, to the

USDA's Contracting Officer's Representative ("COR"). The COR subsequently advised DCI that he could not do anything with DCI's payment request and advised DCI to send its payment request to the Director of Operations at Plum Island, Mr. Thomas Sheridan.

20. On June 10, 2004, DCI, complying with the instructions from the USDA, sent its April payment request to Mr. Sheridan.

21. On June 16, 2004, Mr. Sheridan met with DCI's representatives and advised them that he could not take any action with regard to DCI's April payment request because the government "did not have a contracting officer" for the project.

22. The government's failure to appoint and maintain a contracting officer was an abrogation of its duties under FAR 1-601 and 1.602-2. The latter regulation requires contracting officers to be responsible for ensuring performance of all necessary actions for effective contracting. A significant part of these "necessary actions" was the government's payment of the contractor's requisitions.

23. On June 29, 2004, Kling approved DCI's payment request No. 17, in the amount of $89,629.18, for work DCI had performed in May 2004. The government's architect-engineer, Kling, then sent the payment request to Mr. Vallone, whom Kling believed to be the contracting officer since it had not been advised by anyone in the government that Mr. Vallone would not, in fact, be the contracting officer.

24. Mr. Vallone returned payment request No. 17 to DCI on July 7, 2004, stating that he was not the contracting officer and that he could not process the progress payment request.

25. From May 24, 2004 until July 16, 2004, there was no authorized contracting officer for the DCI contract. The government did nothing to administer the contract, and failed to pay progress payments for work that had been performed by DCI and which had been approved by the architect-engineer for the project.

26. On July 16, 2004, the government issued contract modification No. 13 to DCI, stating that Mr. Mickey Jones of Homeland Security would become the contracting officer.

27. On July 19, 20, and 21, 2004, DCI contacted Mr. Jones to discuss the project and the processing of its outstanding payment requisitions. Telephone calls to Mr. Jones, as was typical in the bureaucratic quagmire that this project became, were never answered by a person and only were answered by an electronic voicemail system. DCI was only able to leave voicemail messages each time. It did not receive any return telephone calls from Mr. Jones in response to these messages.

28. In accordance with Contract Modification No. 13, DCI sent progress payment request Nos. 16 and 17 to Mr. Jones on July 21, 2004 by an overnight delivery service.

29. On July 22, 2004, DCI called Mr. Jones again to attempt to discuss the payment issue. Again, it could only leave a voicemail message and it did not receive a return telephone call.

30. On July 23, 2004, DCI finally was able to speak to Mr. Jones, almost two months to the day since it had spoken to an authorized contracting officer. Mr. Jones advised DCI that the address that the USDA had given DCI to send the payment requisitions was incorrect. Mr. Jones requested that DCI trace the requisitions it had sent to him by overnight delivery.

31. On July 26, 2004, DCI contacted Mr. Jones to advise him that the person at Homeland Security responsible for tracing the payment requisitions that DCI had sent was unavailable. During the telephone conversation, DCI's representative asked Mr. Jones if he would sign the payment requests once he received them. Mr. Jones advised DCI that he was not sure if he would sign the approved pay requests.

32. On July 28, 2004, DCI again telephoned Mr. Jones regarding the payment requests. Once again Mr. Jones stated that he was "not sure" if he would sign the payment requisitions. During this conversation he also advised DCI that he had not yet received its payment requisitions.

33. On July 30, 2004, DCI was advised by Homeland Security mailroom personnel that Mr. Jones' office had, in fact, received the payment requisitions on July 23, 2004.

34. Nevertheless, Mr. Jones has denied receiving the requisitions from July 23, 2004 until the present time. He has not contacted DCI regarding the payment of these requisitions, and to DCI's knowledge and belief, Mr. Jones has not executed these payment requests.

35. DCI's counsel was later advised that Mr. Mickey Jones would only be a "temporary contracting officer" as Homeland Security was considering the transfer of the administration of the contract to a Coast Guard contracting officer.

36. DCI has been informally advised that the Coast Guard, the agency that may take over the administration of this project, is reluctant to do so because funds to administer the contract have not been transferred from the USDA.

37. No one designated by the government to act as a contracting officer has accepted the responsibility or has taken any action on the contract from May 24, 2004 to the present, other than to issue Contract Modification No. 13 on July 16, 2004, designating Mr. Jones as the contracting officer.

38. Despite DCI's repeated attempts to communicate with an authorized contracting officer by telephone between May 24, 2004, and the present, it has only been able to speak directly with any of them on two occasions in the past three months. The latest contracting officer (Mr. Jones) has failed to take any action as a result of the telephone conversations.

39. DCI has not been paid for the work it performed in May or June 2004 and is due $589,088.46, as set forth on its approved payment requisitions. DCI's subcontractors have expressed an unwillingness to proceed with any further work if the government will not pay DCI for the work already performed.

40. The government, acting through the USDA and Homeland Security, breached its contract with DCI by failing to pay approved invoices in accordance with the terms of the contract, FAR 52-232-5 and 52-232-27, and the Prompt Payment Act, P.L. 100-496.

41. The government has further breached its contract with DCI by failing to appoint a contracting officer for nearly two months and by now failing to appoint a contracting officer willing to fulfill his responsibilities under the FAR, 1-602-2, and the contract.

42. The USDA, the agency initially responsible for administering this contract, abandoned the project without an authorized contracting officer in place to continue administration of the contract.

43. The government has denied DCI fair and equitable treatment because its contracting officers have either abandoned the project or are reluctant to act upon and administer the contract. These circumstances are a breach of the government's obligations under the FAR, Section 1-602-2, and the contract.

44. It should be noted that the solicitation provided an option for "partnering" on this project. The government elected to utilize the partnering option when it awarded the contract. The government, in the solicitation, expressed the purpose of partnering on this project as follows:

> In order to most effectively accomplish this contract, the Government is encouraging the formation of a cohesive partnership with the contractor. This partnership would strive to draw on the strengths of each organization in an effort to achieve a quality project done right the first time, within budget, and on schedule.

45. The government has breached the contract by failing to honor the partnering agreement. The government has consistently ignored or thwarted its professed goal of a cohesive partnership to complete the project on time. Its actions are the antithesis of partnering.

46. On May 14, 2004, the USDA contracting officer issued a "stop work" order to DCI that postponed the energizing of the main switchgear. The energizing of the main switchgear must be performed in order to complete the project. DCI had submitted the procedures for this process in 2002 and these procedures were approved at that time. However, the contracting officer, ignoring these approved procedures, improperly halted the work.

47. DCI, by letter dated May 24, 2004, requested a lifting of the "stop work" order so that it could proceed with the

approved energizing and testing of the switchgear and complete the project.

48. The government breached the contract by improperly stopping DCI's energizing of the main switchgear and by preventing it from completing the project.

49. The government's abandonment of the administration of this contract, including non-payment of its approved invoices, failure to appoint a contracting officer for two months and then failing to appoint a contracting officer willing to carry out the duties of a contracting officer, not only has prevented DCI from being paid, but also has denied DCI its rights under the contract, including its administrative dispute rights.

50. It is apparent that the current contracting officer will not act upon any request by DCI. DCI is in a contractual limbo and is unable to either have the benefit of a viable contracting officer or the ability to avail itself of the remedies provided by law, and the contract, to protect its interests.

51. The totality of the circumstances enumerated above demonstrate that the government has abandoned and materially breached its contract with DCI.

52. The contract contained FAR clause 52.249-2, Termination for Convenience of the Government.

53. DCI is entitled to relief under the termination for convenience clause due to the government's failure to administer this contract in a fair and equitable manner, its failure to pay DCI in accordance with the contract provisions and the Prompt Payment Act, and its abject failure to appoint a contracting officer or to act in a timely and good faith manner.

WHEREFORE, DCI respectfully requests that this Court declare that the government has breached the contract and, therefore, has constructively terminated the contract for convenience. DCI, therefore, requests that the government be ordered to equitably adjust the contract in accordance with the termination for convenience clause and to declare that DCI has no further responsibility to perform the contract work.

Respectfully submitted,

Timothy A. Sullivan

Timothy A. Sullivan, Esquire
Starfield & Payne, P.C.
220 Commerce Drive, Suite 250
Fort Washington, PA 19034
Tele: 215-542-7070
Fax: 215-542-0723

Attorney for D.C.I. Danaco Contractors, Inc.

Dated: August 18, 2004